727 F.2d 809
 16 Ed. Law Rep. 378
 DEPARTMENT OF EDUCATION, STATE OF HAWAII, Plaintiff,
v.
KATHERINE D., a minor, By & Through her natural parents &
legal guardians, KEVIN & ROBERTA D.,
Defendants-Counterclaimants-Appellees,
Department of Education, State of Hawaii & Donnis Thompson,
in her capacity as Superintendent of Education,
Counterclaimants-Defendants-Appellants.
 No. 82-4096.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 21, 1982.
Decided Nov. 7, 1983.
As Amended Feb. 24, 1984.
 
 Charleen M. Aina, Honolulu, Hawaii, for counterclaimants-defendants-appellants.
 Paul Alston, Honolulu, Hawaii, for defendants-counterclaimants-appellees.
 Appeal from the United States District Court for the District of Hawaii.
 Before CANBY, NORRIS and REINHARDT, Circuit Judges.
 NORRIS, Circuit Judge:
 
 
 1
 The Department of Education of the State of Hawaii (DOE), appeals from a district court judgment, 531 F.Supp. 517, holding it responsible for Katherine D.'s tuition at a private school. For the school years 1980-81 and 1981-82, Katherine had sought the "free appropriate public education" to which she was entitled under the Education for All Handicapped Children Act of 1975 (EAHCA or Act), 20 U.S.C. Sec. 1401 et seq. (1976). The district court found that the DOE's offers of education for both years were inadequate under the Act and that, consequently, Katherine's parents were entitled to tuition reimbursement for the private school Katherine attended during that time. We affirm the district court's judgment as to the 1980-81 school year but reverse the 1981-82 component. We also reverse the district court's award of attorneys' fees.
 
 
 2
 * Facts
 
 
 3
 Katherine, who was born in 1976, suffers from cystic fibrosis and tracheomalacia, which cause her windpipes to be floppy instead of rigid. Since 1978, Katherine has worn a tracheostomy tube, which allows her to breathe and to expel mucus secretions from her lungs two or three times a day. She is unable to vocalize normally, but has received speech therapy and since February 1981 has been able to speak very softly.
 
 
 4
 In the summer of 1980, Katherine was certified by the DOE as eligible for special education services under the EAHCA. As required by the Act, the DOE offered an Individualized Educational Program (IEP) to Katherine prior to the beginning of the 1980-81 school year. Based on the recommendation of its physician, the DOE determined that the medical services Katherine might require could not be provided at a public school and therefore proposed a homebound program consisting of speech therapy and parent counseling. Katherine's parents rejected the IEP and initiated a due process hearing under the provisions of 20 U.S.C. Sec. 1415(b)(2). During the course of that proceeding, Katherine continued to attend St. Philomena's Child Care Center, where she had been enrolled since 1979. Katherine's attendance at this private preschool was contingent on the presence of her mother. Mrs. D. was a teacher at St. Philomena's and thus was always available to provide for Katherine's health needs.
 
 
 5
 In October 1980 the administrative hearing officer decided that the DOE's offer of a homebound program did not constitute a "free appropriate public education" as required by section 1412(1) of the EAHCA because it did not provide for Katherine's placement in the "least restrictive environment" possible. He concluded that Katherine should continue to attend St. Philomena's and ordered the DOE to pay for her tuition there. The DOE refused to follow the hearing officer's order and, in November 1980, filed a petition for review by the district court under 20 U.S.C. Sec. 1415(e)(2). Katherine counterclaimed for enforcement of the hearing officer's order, attorneys' fees, and costs.
 
 
 6
 After the hearing officer had reached a decision, but before the trial in the district court, the DOE submitted an IEP for the 1981-82 school year to Katherine's parents. Under this IEP, the DOE proposed that Katherine attend Moanalua Elementary School and receive emergency health services, when needed, through the school's staff. The IEP outlined a plan to train the staff to dispense Katherine's medication, suction her lungs, and reinsert her tube should it become dislodged. The first of two planned training sessions was conducted by Dr. Light, Katherine's physician, on September 9, 1981.
 
 
 7
 During this training session, Dr. Light formed the impression that the staff was reluctant to perform the necessary emergency health services for Katherine. He consequently recommended that Katherine not be sent to Moanalua.
 
 
 8
 A short time later, three unions representing Moanalua employees filed grievances with the DOE seeking clarification whether their contracts required them to perform health services for Katherine or similarly situated students. Those grievances had not been resolved by the time of trial.
 
 
 9
 The district court affirmed the findings of the hearing officer as to the 1980-81 school year and held that the DOE had not made an adequate offer for a "free appropriate public education" for either 1980-81 or 1981-82. The district court thus ordered the DOE to reimburse Katherine's parents for the cost of enrolling her in private school during both years,[1] and granted attorneys' fees to appellees. The DOE appeals on all counts.
 
 II
 
 10
 Did the DOE Offer Katherine a "Free Appropriate Public Education"?
 
 
 11
 The EAHCA "both funds and regulates state assistance to handicapped students." Mountain View-Los Altos Union High School Dist. v. Sharron B.H., 709 F.2d 28, 29 (9th Cir.1983). Under section 1412(1) of the EAHCA, a state may qualify for federal assistance for special education programs only if it "has in effect a policy that assures all handicapped children the right to a free appropriate public education." The term "free appropriate public education" is defined as special education plus such "related services" "as may be required to assist a handicapped child to benefit from special education." 20 U.S.C. Sec. 1401(17), (18). The term "related services" is further defined by regulation to include "school health services," i.e., "services provided by a qualified school nurse or other qualified person." 34 C.F.R. Sec. 300.13(b)(10) (1982). Katherine's need both for speech therapy and for maintenance of her tracheostomy tube falls within these definitions. See Hymes v. Harnett County Board of Education, 664 F.2d 410 (4th Cir.1981) (replacement of tracheostomy tube and suctioning of mucus assumed to be "related services" school board was obligated to provide). Under section 1412(5)(B) of the Act, furthermore, participating states must establish "procedures to assure that, to the maximum extent appropriate, handicapped children ... are educated with children who are not handicapped," and that handicapped children are not removed from the "regular educational environment" unless "the nature or severity of the handicap is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily ...."
 
 
 12
 These provisions set forth the DOE's obligations in offering Katherine a special education program under the EAHCA. Noticeably absent from the Act is any requirement that the DOE provide the best possible education for the eligible handicapped child. Because budgetary constraints limit resources that realistically can be committed to these special programs, the DOE is required to make only those efforts to accommodate Katherine's needs that are "within reason." Tokarcik v. Forest Hills School Dist., 665 F.2d 443, 455 (3d Cir.1981), cert. denied, 458 U.S. 1121, 102 S.Ct. 3508, 73 L.Ed.2d 1383 (1982) (related services). As noted by the Supreme Court in its first interpretation of the terms of the EAHCA,
 
 
 13
 furnishing handicapped children with only such services as are available to nonhandicapped children would in all probability fall short of the statutory requirement of "free appropriate public education"; to require, on the other hand, the furnishing of every special service necessary to maximize each handicapped child's potential is, we think, further than Congress intended to go.
 
 
 14
 Board of Education v. Rowley, 458 U.S. 176, 198, 102 S.Ct. 3034, 3047, 73 L.Ed.2d 690 (1982) (emphasis added) (holding that the EAHCA does not require the states "to maximize the potential of each handicapped child commensurate with the opportunity provided nonhandicapped children"). The Court concluded
 
 
 15
 that the "basic floor of opportunity" provided by the Act consists of access to specialized instruction and related services which are individually designed to provide educational benefit to the handicapped child.
 
 
 16
 Id. at 201, 102 S.Ct. at 3048. See also Doe v. Anrig, 692 F.2d 800, 806 (1st Cir.1982) (in determining appropriate placement of an individual handicapped child, the child's needs must be weighed against the realities of limited public monies).
 
 
 17
 We turn now to a consideration of the appropriateness of the IEP's the DOE offered to Katherine D.[2] In determining whether the DOE's proposed programs met the statutory standard, we consider the two relevant school years separately because the programs offered in 1980-1981 and 1981-1982 were significantly different. We hold that the DOE's offer for 1980-81 was inadequate but that the 1981-82 plan offered Katherine a "free appropriate public education."
 
 A. 1981-82 School Year[3]
 
 18
 For the 1981-82 school year, the DOE offered to enroll Katherine in a regular public school program and to train the school staff to respond to her medical needs. The district court held that this offer did not satisfy the EAHCA's "free appropriate public education" requirement because
 
 
 19
 the attitude of the school's personnel toward the plan made it completely unworkable and ineffectual [and] the plan self-destructed with the filing of the grievance by the school administrators and teachers involved.
 
 
 20
 Appellees agree with the district court's conclusion, arguing that the 1981-82 plan was inadequate solely because school personnel were reluctant to administer the necessary emergency health services.
 
 
 21
 We do not agree with the district court that the 1981-82 IEP was so flawed that it failed to satisfy the statutory standard of a "free appropriate public education." The 1981-82 plan met the explicit requirements of the EAHCA and its implementing regulations.[4] Katherine was to attend a regular public school and to receive emergency health services through the school's personnel when required. The district court's conclusion that staff reluctance made this plan unworkable is based upon only two pieces of evidence: first, the testimony by Katherine's physician that he overheard two unidentified teachers expressing hesitation about administering medical services to Katherine, and second, the grievance petition filed by three unions representing teachers and principals. This evidence was insufficient to support the district court's conclusion that the DOE would not provide the health services Katherine required.[5]
 
 
 22
 The grievance petitions sought clarification whether the services Katherine might require fell into the category of "medical services" that were outside the school staffs' contractual responsibilities. It is totally conjectural to assume from this, however, that the teachers would have refused to aid Katherine if ordered by their supervisors to perform the services pending final resolution of the grievance. Nor is there any evidence that the teachers were not competent to provide the care Katherine would have required. Finally, there is no evidence that the school board would not have arranged for special personnel to provide the emergency services if the union ultimately prevailed in the contract dispute and the teachers were not required to comply with orders to attend to Katherine's needs.
 
 
 23
 In sum, the record before us contains insufficient evidence that Katherine would not have received emergency care when needed or that the DOE's proposed plan had "self-destructed." Taking that plan at face value and presuming, as we must in the absence of evidence to the contrary, that it would have been carried out competently and in good faith, we hold that the DOE offered Katherine a "free appropriate public education" for the 1981-82 school year.
 
 B. 1980-81 School Year
 
 24
 For 1980-81, the DOE offered Katherine a homebound program consisting of one and one-half hours of speech therapy and forty minutes of parent counseling per week. No academic instruction was offered. Nor was any effort made to ensure that Katherine would be educated in a school "with children who are not handicapped." 20 U.S.C. Sec. 1412(5)(B). The DOE claimed in its own defense that Katherine's handicap was so severe "that education in regular classes with the use of supplementary aids and services [could not] be achieved satisfactorily." 20 U.S.C. Sec. 1412(5)(B). The district court disagreed, and held that "the home treatment program offered by the DOE in this case does not satisfy the concept of the 'least restrictive environment' prescribed by the federal regulations." 531 F.Supp. at 525.
 
 
 25
 We agree with the district court. Katherine was clearly capable of participating in regular classes with nonhandicapped children. She had attended St. Philomena's for a full year prior to requesting admission to public school. As the DOE's proposal for the 1981-82 school year demonstrates, furthermore, services similar to those provided by Katherine's mother at St. Philomena's could have been made available in a public school setting without unduly burdening the school system. See supra p. 812. These services could have been provided by a "school nurse or other qualified person,"[6] and thus fell squarely within the requirements of the Act. See 34 C.F.R. Sec. 300.13(b)(10) (1982).
 
 
 26
 For these reasons, we hold that because the DOE did not make adequate efforts to place Katherine in a regular educational environment, the 1980-81 IEP did not offer her a "free appropriate public education" within the meaning of the Act.
 
 III
 
 27
 Tuition Reimbursement for the 1980-81 School Year
 
 
 28
 The hearing officer ordered the DOE to reimburse Katherine for her private school tuition for the 1980-81 school year, acting under his "power to order any educational program for the child," 42 Fed.Reg. 42,476, 42,512 (1977), and, if necessary, to require placement in a private school at no cost to the parent. Id. at 42,510; S.Rep. No. 168, 94th Cong., 1st Sess., reprinted in 1975 U.S.Code Cong. & Ad.News 1425, 1426. The district court affirmed. The DOE challenges the district court's affirmance of the hearing officer's award on two grounds:[7] first, that reimbursement of tuition for Katherine's attendance at a private school during 1980-81 pending resolution of a dispute over the IEP for that year is not an available remedy under the EAHCA; and second, that any money judgment against the DOE is barred by the eleventh amendment.
 
 A. Statutory Remedies
 
 29
 The DOE here insists that appellees are not entitled to reimbursement for Katherine's private school tuition for the 1980-81 school year because the remedies available for violations of the EAHCA are limited to prospective relief.[8] Appellees in turn contend that the language of section 1415(e)(2) of the Act, giving the reviewing court authority to grant "such relief as ... is appropriate," supports the district court's retroactive award of the costs of Katherine's attendance at St. Philomena's during 1980-81.
 
 
 30
 The seminal case on the availability of reimbursement as a remedy under the EAHCA is Anderson v. Thompson, 658 F.2d 1205 (7th Cir.1981).[9] There, the Seventh Circuit held that despite the broad language of section 1415(e)(2), the legislative history of the Act demonstrates that the statute "was intended in most cases to provide only injunctive relief as a final procedural safeguard that would ensure an appropriate educational program for a handicapped child." Id. at 1210-11. Despite this general rule, the court recognized that damages might be recoverable in certain "exceptional circumstances," and cited illustratively two situations "in which a limited damage award might be appropriate": first, when the "child's physical health would have been endangered had the parents not made alternative arrangements to those offered by the school system," and second, when the "defendant has acted in bad faith by failing to comply with the procedural provisions of [the Act]." Id. at 1213-14.[10] The court believed these cases to be "exceptional" because
 
 
 31
 [i]n those situations it is likely that Congress, though generally requiring that a child remain in his current placement, 20 U.S.C. Sec. 615(e)(3), would have intended that parents take action to provide the necessary services for their children without awaiting the outcome of lengthy administrative and judicial proceedings. Parents should then be compensated for the costs of obtaining those services that the school district was required to provide.
 
 
 32
 Id. at 1213 (footnote omitted).
 
 
 33
 We recognize that Katherine's situation does not fit the precise facts of either of the illustrative exceptions mentioned in Anderson.[11] Nonetheless, we believe that the DOE's behavior in this case was just as exceptional, and that this case therefore also involves "exceptional circumstances." We hold that an unexplained failure to offer a child placement in a classroom with his peers when the child has clearly demonstrated his ability to function in a classroom environment entitles the child to recover the cost of a private school education until an appropriate program is devised.
 
 
 34
 The congressional preference for educating handicapped children in classrooms with their peers is made unmistakably clear in section 1412(5)(B) of the Act, which provides that "to the maximum extent appropriate," handicapped children should be integrated into a regular educational environment. Although the statute does not require "mainstreaming" in every case, it is fundamental to the scheme and purpose of the Act that handicapped children be provided the same educational opportunity and exposure as those children who are not so disadvantaged. See, e.g., Tokarcik v. Forest Hills School Dist., 665 F.2d 443, 458 (3d Cir.1981), cert. denied, --- U.S. ----, 102 S.Ct. 3508, 73 L.Ed.2d 1383 (1982) ("given the advantages of placement in as normal an environment as possible, to deny a handicapped child access to a regular public school classroom without a compelling educational justification constitutes discrimination and a denial of statutory benefits"); Gladys J. v. Pearland Independent School Dist., 520 F.Supp. 869, 874 n. 5 (S.D.Tex.1981) ("[m]ainstreaming is clearly a predominant thesis underlying the EAHCA"). The DOE's own regulations recognize and implement this congressional preference:
 
 
 35
 Hospitalized and homebound care should be considered to be among the least advantageous educational arrangements [and are] to be utilized only when a more normalized process of education is unsuitable for a student who has severe health restrictions.
 
 
 36
 Department of Education, Program Standards and Guidelines for Special Education and Special Services, Programs and Services for the Orthopedically Handicapped and Other Health Impaired, paras. 27, 29, 30. We thus believe that this is also a case where "Congress ... would have intended that parents take action to provide the necessary services for their children." Anderson, 658 F.2d at 1213.
 
 
 37
 Consequently, we find no error in the district court's award of the cost of Katherine's private school tuition for the 1980-81 school year. Because the DOE failed to offer her a placement with her peers, notwithstanding her undisputed ability to function in a regular classroom environment, Katherine's continued attendance at St. Philomena's during the 1980-81 school year was the only feasible way her parents could assure her the benefits of the regular educational environment to which she was entitled.
 
 
 38
 Our holding is not inconsistent with those cases in which damages have been denied. As far as we can determine from often limited statements of fact, in no other case did a court consider a situation in which a state education agency offered a homebound program to a child who was clearly capable of functioning in a classroom setting. In Mountain View-Los Altos Union High School Dist. v. Sharron B.H., 709 F.2d 28 (9th Cir.1983), for instance, our court denied reimbursement for private school tuition because the procedure for assessing the child's health and education needs had not yet been completed. Id. at 30. In Anderson, the court refused to award damages when the parents of a handicapped child refused the placement in a public school classroom that was offered to her, and instead requested reimbursement of her tuition at a private school. 658 F.2d at 1207. Similarly, in Stemple v. Board of Education, 623 F.2d 893 (4th Cir.1980), cert. denied, 450 U.S. 911, 101 S.Ct. 1348, 67 L.Ed.2d 334 (1981), the court denied reimbursement to parents who unilaterally decided to transfer their handicapped child to a private school when they found her progress in the offered public school placement to be too slow. Because these cases did not involve "exceptional circumstances" to support an award of damages, they are distinguishable from Katherine D.'s situation. We thus hold that if education agencies fail to offer a classroom program to a handicapped child who has clearly demonstrated his ability to function in a normal classroom environment, leaving a private school placement as the only feasible means for satisfying the congressional preference that handicapped children be placed in the least restrictive environment, the state must pay the costs of that placement until an appropriate program is devised.
 
 B. Eleventh Amendment Issue
 
 39
 The DOE also claims that the award of Katherine's school costs violates the eleventh amendment.[12] We disagree. Because the State of Hawaii chose to participate in a federally funded and regulated program to provide special educational programs for its handicapped children, we hold that it waived its eleventh amendment immunity against suit.
 
 
 40
 The Supreme Court has made clear that a state waives its eleventh amendment immunity by engaging in an activity regulated by Congress when Congress has constitutional authority to enact the regulatory statute, and that statute authorizes suits against the state. See, e.g., Parden v. Terminal Ry. of Alabama State Docks Dept., 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964). In Parden, the Court held that "Congress conditioned the right to operate a railroad in interstate commerce upon amenability to suit in federal court as provided by the [Federal Employers' Liability Act]," id. at 192, 84 S.Ct. at 1212, and that "[the state], when it began operation of an interstate railroad ... necessarily consented to such suit as was authorized by that Act." Id. at 192, 84 S.Ct. at 1212.
 
 
 41
 Because, however, the states have "long enjoyed" the protection of the eleventh amendment, Employees v. Department of Public Health & Welfare of Missouri, 411 U.S. 279, 285, 93 S.Ct. 1614, 1618, 36 L.Ed.2d 251 (1973), the Court has said that it
 
 
 42
 will find waiver only where stated "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction."
 
 
 43
 Edelman v. Jordan, 415 U.S. 651, 673, 94 S.Ct. 1347, 1360, 39 L.Ed.2d 662, reh. denied, 416 U.S. 1000, 94 S.Ct. 2414, 40 L.Ed.2d 777 (1974) (quoting Murray v. Wilson Distilling Co., 213 U.S. 151, 171, 29 S.Ct. 458, 53 L.Ed. 742 (1909)). Accordingly, the Ninth Circuit has indicated that eleventh amendment immunity will be waived
 
 
 44
 when Congress has authorized suit against a class of defendants that includes states, and the state enters into the activity regulated by federal law.
 
 
 45
 Mills Music, Inc. v. Arizona, 591 F.2d 1278, 1283 (9th Cir.1979) (Copyright Act).
 
 
 46
 We find that both prongs of the Mills Music test are satisfied in the instant case. Here, Congress conditioned the right to receive funds under the EAHCA on the state's amenability to suit in federal court. Section 1415(e)(2) provides that
 
 
 47
 [a]ny party aggrieved by the findings and decisions made under subsection (b) [providing for administrative review] ... shall have the right to bring a civil action ... in any State court of competent jurisdiction or in a district court of the United States ...
 
 
 48
 Since, inevitably, one of the parties to any EAHCA dispute will be a state agency, see 20 U.S.C. Sec. 1412, this authorization clearly extends to suits against states. We therefore hold that the DOE consented to suit when it applied for and received federal funds under 20 U.S.C. Sec. 1412. The State of Hawaii waived its eleventh amendment immunity and was amenable to suit by Katherine in federal court under the EAHCA.[13]
 
 IV
 Attorneys' Fees
 
 49
 Finally, we reverse the district court's award of attorneys' fees to appellees. While we recognize that the availability of attorneys' fees may be essential to enable many of the handicapped to avail themselves of statutory safeguards enacted for their benefit, we hold that appellees may not recover their fees under either of the statutes on which they rely: the Civil Rights Attorneys' Fees Award Act, 42 U.S.C. Sec. 1988 (1976), or the Rehabilitation Act of 1973, 29 U.S.C. Sec. 794a(b) (Supp. III 1979).
 
 A. 42 U.S.C. Sec. 1988
 
 50
 The Civil Rights Attorneys' Fees Award Act, 42 U.S.C. Sec. 1988, provides for an award of attorneys' fees only to those parties who prevail "in any action or proceeding to enforce a provision of section ... 1983 ... of this title."[14] We hold that appellees cannot recover under this provision because they cannot state a claim under 42 U.S.C. Sec. 1983.
 
 
 51
 The Supreme Court has consistently indicated that the benefits of an action under 42 U.S.C. Sec. 1983 are unavailable "where the governing statute provides an exclusive remedy for violation of its terms." Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981) (citing Maine v. Thiboutot, 448 U.S. 1, 22 n. 11, 100 S.Ct. 2502, 2513, n. 11, 65 L.Ed.2d 555 (1980) (Powell, J., dissenting)). Where Congress has provided a comprehensive enforcement and remedial scheme in enacting a regulatory statute, the Supreme Court has held, we must read the statute "to supplant any remedy that would otherwise be available under Sec. 1983." Middlesex County Sewerage Authority v. National Sea Clammers Assoc., 453 U.S. 1, 21, 101 S.Ct. 2615, 2627, 69 L.Ed.2d 435 (1981).
 
 
 52
 We hold that the complex provisions of section 1415 of the EAHCA, which establish detailed procedures for administrative and judicial review of the state's proposals to educate handicapped children, create a comprehensive and exclusive remedial scheme that precludes reliance upon a cause of action under section 1983. The Act evinces the "balance, completeness, and structural integrity" the Supreme Court has looked to in finding that a statute creates an exclusive remedial scheme. Brown v. GSA, 425 U.S. 820, 832, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402 (1976). See also Smith v. Cumberland School Committee, 703 F.2d 4, 8 (1st Cir.1983) cert. granted, --- U.S. ----, 104 S.Ct. 334, 78 L.Ed.2d 304 (U.S.1983) (No. 82-2120); Anderson v. Thompson, 658 F.2d 1205, 1216 (7th Cir.1981) ("The EAHCA ... contains an elaborate administrative and judicial enforcement system."). Moreover, because money damages are not recoverable under the EAHCA absent exceptional circumstances, the remedies authorized by the two statutes are inconsistent. That is a strong indication that Congress did not intend to leave the section 1983 remedies available. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 150-51 n. 5, 90 S.Ct. 1598, 1604-05 n. 5, 26 L.Ed.2d 142 (1970); Anderson, 658 F.2d at 1216-17. Consequently, appellees may not assert the section 1983 claim necessary to support a fees award under section 1988.[15]
 
 B. 29 U.S.C. Sec. 794a(b)
 
 53
 We apply a similar analysis to find that appellees can assert no claim under the Rehabilitation Act of 1973, 29 U.S.C. Sec. 794a(b), and thus cannot recover their attorneys' fees by reliance on its provisions. 29 U.S.C. Sec. 794 provides in relevant part that "[n]o otherwise qualified handicapped individual ... shall, solely by reason of his handicap, be excluded from the participation in ... any program ... receiving Federal financial assistance." Arguably, Katherine might have recovered under this provision had Congress not enacted the EAHCA to provide special education and health services for handicapped children. In the face of the comprehensive remedial provisions of the EAHCA, however, we must conclude that Congress foreclosed persons complaining of conduct protected by the EAHCA from asserting claims under the Rehabilitation Act. As noted above, the EAHCA establishes detailed procedures for administrative review of states' proposals for educating handicapped children. If aggrieved parties could gain direct access to the courts merely by asserting claims under the Rehabilitation Act, the EAHCA's administrative review requirements could easily be circumvented. As in Brown v. GSA, 425 U.S. 820, 833, 96 S.Ct. 1961, 1968, 48 L.Ed.2d 402 (1976), Congress' "careful blend of administrative and judicial enforcement powers" compels a conclusion that other remedies are precluded. The Rehabilitation Act cannot be used to create an "end run" around the restrictions of the EAHCA and to gain remedies that would otherwise be unavailable. Reineman v. Valley View Comm. School Dist., 527 F.Supp. 661, 665 (N.D.Ill.1981), ("[plaintiffs could not recover damages under the Rehabilitation Act because they] cannot do indirectly via [the Rehabilitation Act] what Anderson teaches may not be done directly"); see also Hines v. Pitt County Board of Education, 497 F.Supp. 403 (E.D.N.C.1980) (although plaintiff included cause of action under Rehabilitation Act, attorneys' fees under 29 U.S.C. Sec. 794a(b) held unavailable because suit had been treated as arising under EAHCA throughout litigation).[16] Prohibiting reliance on the Rehabilitation Act in this case also accords with the long-established principle of statutory construction that "a precisely drawn, detailed statute pre-empts more general remedies." Brown v. GSA, 425 U.S. at 834, 96 S.Ct. at 1968. We thus hold that Katherine cannot recover attorneys' fees under section 794a(b) of the Rehabilitation Act.
 
 
 54
 In sum, we hold that Katherine prevailed in this litigation solely on the basis of her rights under the EAHCA, and that the comprehensive remedial provisions of that statute prevent her from recovering attorneys' fees under either 42 U.S.C. Sec. 1983 or the Rehabilitation Act, 29 U.S.C. Sec. 794a(b).
 
 
 55
 AFFIRMED in part and REVERSED in part.
 
 
 56
 REINHARDT, Circuit Judge, concurring in part and dissenting in part:
 
 
 57
 I dissent from the majority's rejection of the district court's finding that the Department of Education failed to offer Katherine a free appropriate public education for the 1981-82 school year. I cannot agree that the district court's finding in this regard was clearly erroneous. I concur in all other parts of Judge Norris's opinion.
 
 
 58
 The majority does not state clearly what it believes Katherine was required to show in the district court. Parts of the opinion indicate that reluctance on the part of the school's staff would be enough to render the school's plan unworkable, yet other parts suggest that only a showing of positive refusal to perform the required services would suffice.
 
 
 59
 I believe that under the circumstances the staff's reluctance to perform the required services rendered the plan inadequate for purposes of the EAHCA. Katherine's physician testified that delay by the school staff in performing the emergency services would have been life-threatening to Katherine and that a cooperative attitude on the part of the teachers was essential to the effectiveness of the emergency plan. The district court credited the physician's testimony with regard to these factual issues; we are not free to disregard it here. A plan involving such a risk to a child's life cannot be considered adequate.
 
 
 60
 The filing of a grievance petition by the teachers' union and the conversations overheard by the physician support a finding that at least part of the school's staff was reluctant to perform the services and justify an inference that there might have been hesitation or delay at the crucial moment. The district court's holding that the attitude of the school's personnel rendered the plan inadequate was therefore not clearly erroneous.
 
 
 61
 Moreover, Katherine's parents were not required to show conclusively that the teachers would have refused to perform the emergency services when necessary. The Act certainly does not require parents to risk their child's life pending a conclusive showing that essential services would not be provided. In life-and-death situations such as the one involved here, a reasonable doubt whether the services would be provided is enough to justify parents in refusing to enroll their children in a school.
 
 
 62
 The evidence presented here may reasonably have led Katherine's parents to doubt whether the school's staff would have provided the services when they were needed. Katherine's physician, who was responsible for training the teachers in the emergency procedures and who conducted an introductory training session, testified that the teachers were unwilling to perform the required services. His testimony was buttressed by the teacher's union's filing of a grievance petition. Although that evidence does not compel a conclusion that the teachers would have refused to perform the services if put to the test, it is certainly sufficient to raise a reasonable doubt in one's mind on that point.
 
 
 63
 In short, the district court's finding that the staff's attitude rendered the plan inadequate was not clearly erroneous. Accordingly, I would affirm the district court's conclusion that the Department of Education did not offer Katherine a free appropriate public education for the second year. Because the Department's prior EAHCA violation was not cured by the school's offer of the second plan, I would affirm the district court's award of damages for both years in accordance with our holding that, when exceptional circumstances are involved, the state must pay the cost of private school placement until an appropriate program is devised.
 
 
 
 [1]
 The district judge did not make clear whether he intended to extend his order of reimbursement to cover both the 1980-81 and the 1981-82 school years. Because we hold that the DOE's 1981-82 IEP offered a "free appropriate public education," we need not reach the question whether an award of Katherine's school costs for that year would have been justified
 
 
 [2]
 We apply a de novo standard of review to the questions whether the DOE's IEPs constituted a "free appropriate public education" within the meaning of the EAHCA and whether the Act provides for an award of damages and attorneys' fees. Because those determinations require us to weigh the values underlying the statute in deciding the legal sufficiency of the DOE's offers--we must, for instance, determine the weight to be assigned the explicit congressional preference that handicapped children be educated in classrooms with their peers, see infra p. 818 --we treat them as questions of law. Cf. Bonnette v. California Health and Welfare Agency, 704 F.2d 1465, 1468-69 (9th Cir.1983) (whether state was "employer" within meaning of Fair Labor Standards Act treated as question of law)
 
 
 [3]
 Although the administrative hearing officer was never asked to consider whether the DOE's IEP for the 1981-82 school year constituted a "free appropriate public education," we hold that it was proper for the district judge to decide that question when the case came before him. Because Congress "intended the courts to make independent program decisions based on a preponderance of the evidence," Anderson v. Thompson, 658 F.2d 1205, 1208 (7th Cir.1981) (affirming district court's consideration of plaintiff's then current educational requirements despite absence of prior administrative findings); see 20 U.S.C. Sec. 1415(e)(2), the district court in this case was not hampered by the absence of administrative findings on Katherine's educational or health needs. See also Doe v. Anrig, 692 F.2d 800, 805 (1st Cir.1982) ("the review mechanism which the Act creates stands in sharp contrast to the usual situation where a court is confined to examining the record made before the agency"). Nor are the necessary findings so technical or specialized that the trial judge is less competent than the administrative hearing officer to make them de novo. As a matter of judicial efficiency, furthermore, it was sensible for the trial judge to consider the DOE's offers for both school years at the same time
 
 
 [4]
 The question whether the 1981-82 offer satisfied the statutory requirements is judged by an absolute, not a comparative, standard. As noted in text, supra p. 813, Katherine was entitled only to an appropriate, not to the best, education at public expense. It is thus irrelevant to our determination whether a placement at St. Philomena's would have been superior to a public school placement in 1981-82. Thus, the fortuitous circumstance of Mrs. D.'s presence at St. Philomena's is not a factor that we can consider in evaluating the DOE's 1981-82 proposal
 
 
 [5]
 We apply the clearly erroneous standard of review to test the district court's factual finding that the school staff was unwilling to perform the required emergency health services for Katherine. As indicated in text, we do not accept this factual finding, even under the deferential standard of review we apply to it
 
 
 [6]
 It is indisputable that even a lay person could have been trained to provide the services Katherine required. Indeed, Katherine's mother, who had had no medical training, had performed them for some time
 
 
 [7]
 The DOE also contends that appellees do not have standing to ask the court to award them the cost of Katherine's private schooling because, since the hearing officer decided in their favor, they are not "aggrieved parties" within the meaning of section 1415(e)(2). We reject this contention. Although the DOE relies on Colin K. v. Schmidt, 528 F.Supp. 355 (D.R.I.1981), and Scruggs v. Campbell, 630 F.2d 237 (4th Cir.1980), to support its claim, both of these cases are distinguishable. Colin K. held only that a parent was no longer an "aggrieved party" when the state education agency agreed to satisfy the parent's claims after suit in federal court had begun. The court in Scruggs held that a plaintiff could not request review of an administrative determination under the Act simultaneously in both federal and state forums. Neither speaks to the facts of this case, in which the DOE to date has refused to enforce the hearing officer's order and in fact initiated this suit itself. In responding to the DOE's action with a counterclaim, appellees thus had standing to press enforcement of the hearing officer's decision
 
 
 [8]
 The DOE contends only that the retroactive award of Katherine's tuition for the period pending resolution of the dispute over the IEP is impermissible under the EAHCA. As to any prospective relief, the statute provides that a state education agency must pay the costs of private schooling concurrently with the child's enrollment if the agency or a hearing officer determines that a private school program is the appropriate placement to meet EAHCA requirements. See 20 U.S.C. Sec. 1413(a)(4)(B)
 
 
 [9]
 In Mountain View-Los Altos Union High School Dist. v. Sharron B.H., 709 F.2d 28 (9th Cir.1983), we relied upon Anderson as an "extensive and well reasoned opinion," id. at 30, to support our conclusion that damages were inappropriate when the administrative assessment procedure preparatory to offering a placement for a handicapped child had not yet been completed. Anderson has also been cited with approval by other circuits. See, e.g., Miener v. Missouri, 673 F.2d 969, 979 (8th Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982)
 
 
 [10]
 These "exceptional circumstances" are best described in the cases in which they were first held to exist. In Tatro v. Texas, 516 F.Supp. 968 (N.D.Tex.1981), cited by the Anderson court to illustrate the first of its exceptions to the general rule, the court ordered reimbursement of private school tuition when the school district's offer to enroll a handicapped child in a public school program did not make provision for the "related health services" the district knew the child would need in order to attend. The court there indicated that "where ... the parents cannot enroll the child [in the offered placement] without a risk of injury to the child because a school will not provide a required related service [there, regular catheterization], appropriate relief ought to include the cost of alternative sources of education and therapy." Id. at 978. In Monahan v. Nebraska, 491 F.Supp. 1074 (D.Neb.1980), the case used in Anderson to illustrate the bad faith exception to the general rule, the court held that an award of the interim costs of private schooling was "appropriate" relief where the state's statutory procedures for review of placement offers did not comply with the requirements of the EAHCA. Also pointing to an administrative failure to follow prescribed procedures, the court in Christopher T. v. San Francisco Unified School Dist., 553 F.Supp. 1107, 1121 (N.D.Cal.1982), awarded plaintiffs reimbursement for residential placement of their child when the state education agency wilfully avoided taking responsibility for his education. Similarly, the court in Boxall v. Sequoia Union High School Dist., 464 F.Supp. 1104 (N.D.Cal.1979), awarded plaintiffs the cost of a home tutor for their autistic child after the local school district refused to follow the recommendation of every other state agency consulted that individualized supervision for the child be provided
 
 
 [11]
 Unlike the plaintiff in Tatro, Katherine was not physically incapable of accepting the DOE's offer for the 1980-81 school year. The DOE failed to provide her not with essential health services but rather with an adequate educational program in a classroom with her peers. See infra p. 818. Nor is the DOE guilty of the kind of procedural bad faith implicitly recognized as a basis for an award of damages in Monahan, Christopher T. and Boxall: the DOE was following the procedural safeguards of the EAHCA in pursuing administrative and judicial review of its placement offer
 
 
 [12]
 The eleventh amendment is not by its terms applicable to suits brought against a state by its own citizens. Nonetheless, "it is established that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Employees v. Department of Public Health and Welfare, 411 U.S. 279, 280, 93 S.Ct. 1614, 1615, 36 L.Ed.2d 251 (1973) (citations omitted)
 
 
 [13]
 Because we find that the DOE waived its eleventh amendment rights by consenting to the terms of the EAHCA, we do not reach the appellees' contentions that that immunity could also have been waived by the DOE's initiation of this suit, by the state's passage of its own tort claims act, or by Congress' authority to abrogate eleventh amendment immunity if it passes legislation under Sec. 5 of the fourteenth amendment
 
 
 [14]
 The parties do not claim that any of the other statutory provisions to which 42 U.S.C. Sec. 1988 is applicable is implicated in this case
 
 
 [15]
 Nor can Katherine assert a viable cause of action under Sec. 1983 by relying on a claim that her right to equal protection was violated by the DOE's failure to offer her an adequate educational program. It is clear that where adequate alternative remedies remain available Congress may abrogate a statutory means for the enforcement of constitutional rights. The comprehensive nature of the remedies laid out in the EAHCA evinces a congressional intent to preclude reliance on either a statutory or a constitutional cause of action under Sec. 1983. It is arguable that where adequate alternative remedies for the vindication of constitutional rights are unavailable, Congress may not abrogate existing statutory means of enforcement. See Hart, The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic, 66 Harv.L.Rev. 1362 (1953). Cf. Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (despite absence of statutory authorization, money damages available to compensate victims of fourth amendment violations). Appellees do not argue, however, that the EAHCA remedies are constitutionally inadequate. Thus, we do not reach the question
 
 
 [16]
 Some district courts have held that attorneys' fees under the Rehabilitation Act will be available even in cases in which the prevailing party has relied primarily on the EAHCA to support his substantive claims. See, e.g., Patsel v. District of Columbia Board of Education, 530 F.Supp. 660 (D.D.C.1982); Campbell v. Talladega County Board of Education, 518 F.Supp. 47 (N.D.Ala.1981); Tatro v. Texas, 516 F.Supp. 968 (N.D.Tex.1981). For the reasons given in the text, we cannot accept those courts' holdings. See supra p. 819-820