**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2596
_____

E.I.H.; R.H., Individually and on behalf of L.H.,

Appellants

v.

FAIR LAWN BOARD OF EDUCATION
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 2-15-cv-08658)
District Judge:  Hon. Katharine S. Hayden
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 12, 2018
_____

Before:  CHAGARES, VANASKIE, <u>Circuit</u> <u>Judges</u>, and BOLTON, <u>District</u> <u>Judge</u>[*]

(Filed: September 5, 2018)
_____

OPINION[**]
_____

---

[*]     The Honorable Susan R. Bolton, Senior United States District Judge for the
District of Arizona, sitting by designation.

[**]     This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

VANASKIE, *Circuit Judge*

E.I.H. and R.H., individually and on behalf of their autistic daughter, L.H., appeal the District Court's decision that L.H.'s Individualized Education Plan ("IEP") did not need to include nurse accompaniment on her bus route to school. They also appeal the denial of attorneys' fees under the Individuals with Disabilities Education Act ("IDEA"). For the following reasons, we will reverse the June 30, 2017, Order of the District Court as we find the inclusion of the nurse on L.H.'s bus route to school was a related service necessary for inclusion within her IEP. Because of this, we will remand the matter to the District Court to award attorneys' fees in an amount deemed appropriate.

I.

L.H. is an autistic girl who attended New Beginnings School, an out of district placement in the Fair Lawn School District.[1] Transportation to and from the school is listed as a "related service" in her IEP. (A7). On February 5, 2015, L.H. was taken to Hackensack University Medical Center after experiencing a seizure. Hospital staff recommended medical follow-up with L.H.'s general pediatrician, and her parents took L.H. to her pediatric neurologist, Michael Katz, the next day. Katz diagnosed L.H. with epilepsy and prescribed Diastat, a medication that must be administered rectally for seizures lasting longer than two minutes.

On February 9, 2015, L.H.'s parents contacted her case manager at Fair Lawn, Michael Russomanno, to request that the District provide a health professional trained in

---

[1] It is unclear, based on information in the record, whether L.H. is still a student at New Beginnings or if she has graduated.

the administration of Diastat on L.H.'s bus. After talks with the District, an aide was finally placed on L.H's bus beginning on March 9, 2015. Prior to the grant of the request, L.H.'s parents transported her to school for the period between February 9, 2015 and March 9, 2015.

Thereafter, School District personnel discussed whether they needed to amend L.H.'s IEP to add the nurse-transportation component. Ultimately, they decided to add the service to L.H.'s individualized health plan ("IHP") on the basis that the service was responding to a medical issue as opposed to an educational one.[2] On February 26, 2015, L.H.'s parents filed a request for emergent relief and due process, claiming violations of the IDEA. On March 27, 2015, while proceedings were pending, L.H.'s IHP was amended to state that "[w]hile awaiting diagnostic information the district is providing on the school bus a licensed medical professional to carry out medical orders regarding seizure medication [at the District's expense]." (A66).

That same day, Administrative Law Judge ("ALJ") Sandra Ann Robinson issued an emergent relief order requiring "that the medically trained individual continue on the transport with L.H. throughout the period of a due process hearing on this matter." (*Id.* at 55). After three days of hearings, ALJ Judge Jesse H. Strauss held as follows:

---

[2] Unlike an IEP, which incorporates a "Stay-Put" component, meaning a student's IEP cannot be changed or disregarded at will, 20 U.S.C. § 1415(j), an IHP, such as the one presented by the Board to L.H., has no stay-put safeguard. (App. 68). An IHP is used when a student has medical problems that require monitoring but nevertheless do not affect the student's ability to learn. *See* N.J. Admin. Code § 6A:16-2.1(a)(10) (providing mandate for school nurses to create individualized health plans for students with chronic medical conditions, regardless of any connection to the student's ability to learn).

> Once [District physician] Dr. Muccini(sic) agreed that L.H. required a nurse on the bus as part of her transportation-related service notwithstanding his position that L.H. required additional and more definitive testing, the [relevant] regulations make it abundantly clear that the District was required to amend L.H.'s IEP to reflect the nursing service as part of the transportation related service, and I so CONCLUDE. . . . The District erred in not amending the related services portion of L.H.'s IEP. If it were subsequently determined by more comprehensive testing that this service for L.H. was not necessary, the IEP can again be amended.

(A68). ALJ Strauss further found that the District should have reacted more promptly to L.H.'s request, and therefore ordered the District to pay L.H.'s parents $192 as compensation for previously transporting their daughter to and from school until the accompanying medical professional was provided.

Having been successful in the administrative process, L.H. and her parents brought an action under the IDEA to recover the attorneys' fees expended in obtaining the ALJ decision. L.H. and her parents moved for summary judgment contending that the favorable outcome with the ALJ made them a "prevailing party" under the IDEA and entitled them to legal fees. 20 U.S.C. § 1415(i)(3)(B). The School District cross-moved for summary judgment arguing that the ALJ's decision regarding the inclusion of the transportation nurse within L.H.'s IEP as opposed to her IHP was incorrect.

The District Court, disagreeing with the ALJ's finding, concluded that inclusion of a transportation nurse within L.H.'s IEP was not a "related service" necessary to enable "a free, appropriate public education as described in the individualized education program of the child." N.J. Admin. Code § 6A:14-3.9(a)(8)(incorporating the mandate in IDEA). According to the District Court, the nurse's presence was merely a health

4

precaution; that is, her obligation to tend to a medical issue that occurred on a school bus had nothing to do with L.H.'s ability to obtain an education. In so finding, the District Court expressed its holding as follows:

> Although L.H.'s doctor diagnosed her with epilepsy, it is not the diagnosis of a medical condition in the abstract, but the *impact* that the medical condition has on a student's ability to receive a [Free Appropriate Public Education, or "FAPE"] in the absence of the related service sought, that is relevant to whether the district must list that service in L.H.'s IEP [as opposed to her IHP]. The district physician's recommendation to place a nurse on L.H.'s bus pending more definitive testing does not support the conclusion that the service was required in order for L.H. to receive a FAPE, as the ALJ held.

(A6).

After finding that L.H. and her parents had not "obtain[ed] relief on what they themselves deemed to be the 'core issue' in this case[,]" the District Court concluded that they were no longer "prevailing parties" under the IDEA, and thus were not entitled to attorneys' fees. (A8); 20 U.S.C. § 1415(i)(3)(B). The District Court did, however, affirm the ALJ's decision requiring reimbursement of the $192 for the transportation of L.H. while the medical professional was being assigned to her bus route. L.H. and her parents timely appealed.

## II.

The District Court had jurisdiction pursuant to 20 U.S.C. § 1415(i)(2), (3)(A), and we have jurisdiction pursuant to 28 U.S.C. § 1291. Our standard of review on an appeal from a grant of summary judgment is plenary. *Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co*., 10 F.3d 144, 146 (3d Cir. 1993).

On appeal, L.H. and her parents argue that the District Court did not give adequate deference to the ALJ's findings. Related to that point, they argue that since the District Court was incorrect to overturn the ALJ's findings, they are accordingly entitled to attorneys' fees as a prevailing party under the IDEA.

A.

Under the IDEA, a district court is required to employ a standard of review that is peculiar to special education cases. Referred to as "modified *de novo*" review, this standard requires that courts give "due weight" to the findings and conclusions of the ALJ. *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003). Should the district court decide not to follow the ALJ's factual conclusions, then it must explain its reasons for doing so. *Id.* The purpose of the due weight standard is to preclude a district court from substituting its own views regarding educational standards for those of an experienced hearing officer who is well-versed in interpreting relevant regulations and policy. *See Oberti v. Bd. of Educ. of the Borough of Clementon Sch. Dist.*, 995 F.2d 1204, 1219 (3d Cir. 1993). In contrast to its factual findings, the ALJ's conclusions of law are subject to plenary review by a district court. *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 243 (3d Cir. 2012).

L.H. and her parents assert that the District Court failed to afford the ALJ's factual conclusions due weight. We agree.

The IDEA's centerpiece is the IEP, which is "the package of special educational and related services designed to meet the unique needs of the disabled child." *Carlisle*

6

*Area Sch. v. Scott P.*, 62 F.3d 520, 526 (3d Cir. 1995). A school district satisfies its obligation under the IDEA if it provides an eligible student with personalized instruction that includes "sufficient support services [needed] to permit the child to benefit educationally from that instruction." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty., v. Rowley*, 458 U.S. 176, 203 (1982). Anything considered to be a "related service"—*i.e.*, a service necessary to assist a qualifying student in obtaining an education— must be listed in the student's IEP. 20 U.S.C. § 1401(26)(A).

Relevant to our case, nursing services are required as a related service through an IEP "to the extent such services are designed to enable a child with a disability to receive a free, appropriate public education as described in the individualized education program of the child." N.J. Admin. Code § 6A:14-3.9(a)(8). Transportation to and from school is deemed a related service that is required in an IEP if the service is necessary for the student to access and obtain educational benefits. 20 U.S.C. § 1401(26)(A); N.J. Admin. Code § 6A:14-3.9(a)(7). Transportation services can include aides, equipment, assistive devices, or any accommodations for assistance as needed. N.J. Admin. Code. 6A:27-5.1.

Here there is no dispute that the provision of transportation itself was required and so was included in L.H.'s IEP. In reversing the ALJ, the District Court relied heavily on the ALJ's observation that the nurse may become unnecessary over time, "[i]f it were subsequently determined by more comprehensive testing that this service for L.H. was [no longer needed]." (A68). However, simply because the service may be limited in duration, does not, on its own, belie the conclusion that it was a necessary service needed to provide a FAPE. In fact, the IDEA contemplates that a service included within an IEP

7

might be of limited duration. *See* 20 U.S.C. § 1414(d)(1)(A)(i)(VII) ("The term 'individualized education program' or 'IEP' means a written statement for each child with a disability that is developed, reviewed, and revised in accordance with this section and that includes. . . the projected date for the beginning of the services. . ., and the anticipated frequency, location, and duration of those services.").

Moreover, the record clearly reflects that L.H. could not take the bus, which again, is a FAPE-required service, until a nurse was provided to administer the Diastat if needed. It would thus seem beyond dispute that the nurse was thereby necessary, at that time, for L.H. to gain access to a FAPE, notwithstanding the possibility that this conclusion might change at a later date. And, coinciding with that conclusion, if it was necessary for her to have the nurse to gain access to a FAPE, then it necessarily should have been included in her IEP, not her IHP. To the extent the District Court disagreed with these factual determinations as found by the ALJ, it should have provided some reasoning — with citations to the record — for why it rejected those determinations. *S.H.* 336 F.3d at 270. Simply put, the District Court did not do that here.

With regard to the cases cited by the District Court as grounds for reversal, we note that they themselves do not address what constitutes a related-service, since within those cases, the services discussed fell squarely within the statutory definition of a related service. *See, e.g., Irving Indep. Sch. Dist. v. Tatro*, 468 U.S. 883, 890-91 (1984) ("The Court of Appeals was clearly correct in holding that [clean intermittent catheterization ]" "fall[s] squarely within the definition of a 'supportive service'" because the child could not otherwise "attend school and thereby 'benefit from special education.'"); *Dep't of*

8

*Educ. v. Katherine D*., 727 F.2d 809, 813 (9th Cir. 1983) (concluding in a single sentence, without further analysis, that the child's "need . . . for maintenance of her tracheostomy tube falls within [the related services] definitions"). Moreover, the holding of these cases dealt with legal questions not present in L.H.'s case. *See, e.g., id.* at 812 (whether the school district's proposed offer of education was an adequate FAPE); *Cedar Rapids Cmty. Sch. Dist. v. Garret F. ex rel. Charlene F*., 526 U.S. 66, 75–76 (1999) (whether the services required for access to a FAPE constituted an unfair financial burden to the school district).

The District Court also seemed to think that it was significant that the cases upon which it relied dealt with health conditions more serious than L.H.'s. *See e.g.*, *Irving Indep. Sch. Dist.*, 468 U.S. at 895 (dealing with clean intermittent catheterization throughout the day); *Katherine D*., 727 F.2d at 809 (dealing with a tracheostomy tube and suctioning of mucus in order to breathe); *Cedar Rapids Cmty. Sch. Dist.*, 526 U.S. at 66 (dealing with the need for a ventilator for a wheelchair-bound student to keep him alive). However, there is no severity threshold that must be met by one's medical condition in order to qualify as a "related service," and none of those cases suggest otherwise.

Here, accepting that L.H.'s bus transportation is already included in her IEP as a related service, and understanding—as the School District already does—that L.H. needs the nurse on the bus in order to safely get to school in the event of a seizure, it stands to reason that she would not be able to access her FAPE without the nurse. And if that is the case, then the ALJ was correct to include the nurse within L.H.'s IEP as opposed to IHP.

9

B.

Because L.H.'s IEP should have been amended to include the transportation nurse, we conclude that L.H. and her parents are entitled to attorneys' fees. The IDEA contains a fee-shifting provision, which provides in relevant part:

> In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs[] to a prevailing party who is the parent of a child with a disability.

20 U.S.C. § 1415(i)(3)(B)(i). The test to determine prevailing party status is well-established in our Circuit and requires a two-part inquiry: (1) whether the plaintiff "obtained relief on a significant claim in the litigation"; and (2) whether there is "a 'causal connection between the litigation and the relief obtained from the defendant.'" *Holmes v. Millcreek Twp. Sch. Dist.,* 205 F.3d 583, 593 (3d Cir. 2000) (quoting *Institutionalized Juveniles v. Sec'y of Pub. Welfare*, 758 F.2d 897, 910 (3d Cir. 1985)).

Here, the inclusion of the nurse within L.H.'s IEP was the entire claim upon which this case was premised. By finding that the nurse was a related service deserving of inclusion within her IEP, L.H. has "obtained relief on a significant claim in the litigation," as a direct result of the litigation, thereby meeting the requirements for prevailing party status. *Id.* Moreover, the inclusion of the nurse within L.H.'s IEP was a significant change to her educational plan, and did not merely maintain the status quo—this entitles Appellants to attorneys' fees. *J.O. ex rel. C.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267, 274 (3d Cir. 2002).

10

**IV.**

Based on the foregoing, we will reverse the June 30, 2017, Order of the District Court, and remand for a determination of the amount of attorneys' fees to be awarded to Appellants.