768 F.2d 1030
 54 USLW 2129, 15 Envtl. L. Rep. 20,985
 ALMOND HILL SCHOOL, et al., Plaintiffs-Appellants,
v.
UNITED STATES DEPARTMENT OF AGRICULTURE, John R. Block,
Secretary; and California Department of Food and
Agriculture, Clare Berryhill, Director; and T.L. Ladd,
Chairman, Japanese Beetle Science Advisory Panel, in their
official capacities, Defendants-Appellees.
 No. 84-1943.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 12, 1985.
Decided Aug. 12, 1985.
 
 Duane C. Miller, Miller & Rolfe, Sacramento, Cal., for plaintiff-appellants.
 Roderick E. Walston, San Francisco, Cal., David C. Shilton, Washington, D.C., for defendants-appellees.
 Appeal from the United States District Court for the Eastern District of California.
 Before SNEED, TANG and CANBY, Circuit Judges.
 TANG, Circuit Judge:
 
 
 1
 Almond Hill School and numerous other plaintiffs in the Sacramento area appeal the district court's denial of their motion for a preliminary injunction to halt the State's use of pesticide spraying to combat a Japanese beetle infestation in their area. The issues presented are whether these plaintiffs may state a private cause of action through 42 U.S.C. Sec. 1983 to enforce the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), 7 U.S.C. Secs. 136 et seq., and whether federal participation in the California beetle eradication project is sufficient to trigger the environmental impact statement requirement of the National Environmental Policy Act (NEPA), 42 U.S.C. Secs. 4331 et seq.
 
 I.
 
 2
 In June, 1983, several Japanese beetles were found in the Sacramento area. The California Department of Food and Agriculture (CDFA) conducted a trapping and detection program which indicated that the number of beetles in the area was increasing rapidly.[1]
 
 
 3
 In response to the threat, the CDFA convened a scientific advisory panel to study the problem and to recommend possible action to stop the infestation. The CDFA invited Thyril Ladd, a research entomologist with the United States Department of Agriculture, to head the eight-member advisory panel. As part of his responsibilities, Ladd aided in the selection of five other individuals to serve on the panel, including two federal officials. Their travel expenses were paid by the State of California although the State did not reimburse the federal government for any part of their federal salaries. The panel also included research entomologists from Pennsylvania State University, the New York State Agricultural Experiment Station, and three officials from the CDFA.
 
 
 4
 The panel recommended to the CDFA that insecticide spraying be used to combat the threat of infestation. The CDFA adopted the recommendation and implemented a spraying program later in the summer. Approximately 4,500 homes in a four square mile area were sprayed with carbaryl, diazinon and oftanol. The spraying of oftanol was halted after tests on laboratory animals indicated health risks associated with exposure to that pesticide which prompted the State to suspend its registration. Spraying with carbaryl and diazinon continued as part of the beetle eradication project.
 
 
 5
 The appellants, approximately 100 citizens in the Sacramento area, brought this action in the Eastern District of California to enjoin the pesticide spraying. They have brought an action through 42 U.S.C. Sec. 1983, claiming that the eradication project is utilizing pesticides in violation of the labeling provisions of the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), 7 U.S.C. Secs. 136 et seq. They also claim that the project violates the National Environmental Policy Act (NEPA), 42 U.S.C. Secs. 4332 et seq., because the spraying commenced without compliance with the Act's environmental impact statement requirement. Named as defendants in the action are the United States Department of Agriculture, the Secretary of the Department of Agriculture, the California Department of Food and Agriculture and its Director, and the head of the State's scientific advisory panel, Thyril Ladd.
 
 
 6
 The district court denied injunctive relief. It concluded that the plaintiffs could not demonstrate probable success on the merits of their NEPA claim because there was a lack of evidence that the federal government was sufficiently involved with the spraying project to render it federal for NEPA purposes. It also concluded that the balance of hardships tipped in favor of the State because the causal connection between exposure to the pesticides and the asserted health risks was questionable while the risk of significant agricultural losses was great.[2] The district court considered the potential consequences of an erroneous injunction to be higher costs to agriculture, increased spraying costs upon resumption of the project, and a wider geographic exposure to spraying should the beetle infestation spread.
 
 
 7
 The district court denied relief on the FIFRA claim, concluding that probable success on the FIFRA claim was not likely and that the balance of hardships did not tip in favor of the plaintiffs. The district court expressed doubt as to whether a private right of action existed through 42 U.S.C. Sec. 1983 to enforce FIFRA, but did not decide that issue. The plaintiffs' motion for an injunction pending appeal was denied by this court on May 14, 1984.
 
 II.
 
 8
 Initially, we must address a challenge to our jurisdiction. The state defendants contend that the eleventh amendment bars this action against them for alleged violations of federal statutes. They concede that actions seeking injunctive relief against state officials may be heard in federal court when the complaint alleges that the officials were acting unconstitutionally. Because the claim in this case alleges violations of federal statutory law only, the state defendants urge this court to apply the general eleventh amendment rule prohibiting suits against state officials when the state is the real party in interest.
 
 
 9
 The eleventh amendment prohibits federal courts from entertaining suits brought by private citizens against any state in the absence of state consent. Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).[3] Naming state officials as defendants rather than the state itself will not avoid the eleventh amendment when the state is the real party in interest. The state is the real party in interest when the judgment would tap the state's treasury or restrain or compel government action. Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 908 n. 11, 79 L.Ed.2d 67 (1984) (Pennhurst II ); Dugan v. Rank, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963).
 
 
 10
 An exception for suits against state officers that impact on the state itself is allowed to prevent the enforcement of unconstitutional state action. Such suits are not considered suits against the state because the state cannot authorize officials to act in violation of the federal constitution. The official acting unconstitutionally is therefore "stripped of his official or representative character." Ex parte Young, 209 U.S. 123, 160, 28 S.Ct. 441, 454, 52 L.Ed. 714 (1908). The Ex parte Young exception is necessary "to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.' " Pennhurst II, 104 S.Ct. at 910 (quoting Ex parte Young, 209 U.S. at 160, 28 S.Ct. at 454). Thus, the eleventh amendment does not bar an injunctive action against a state official that is based on a theory that the officer acted unconstitutionally.
 
 
 11
 The doctrine of Ex parte Young, however, has been limited to actions for prospective relief. Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Fiscal effects on state treasuries are acceptable only to the extent they are necessarily incident to compliance with prospective orders. Hutto v. Finney, 437 U.S. 678, 690, 98 S.Ct. 2565, 2573, 57 L.Ed.2d 522 (1978); Edelman, 415 U.S. at 668, 94 S.Ct. at 1358. Extending Ex parte Young to actions for retroactive relief (damages) would eviscerate the concept of sovereign immunity inherent in the eleventh amendment. Edelman, 415 U.S. at 665, 94 S.Ct. at 1356. Thus, limiting Ex parte Young to actions which only seek prospective relief "fulfills the underlying purpose of Ex parte Young while at the same time preserving to an important degree the constitutional immunity of the States." Pennhurst II, 104 S.Ct. at 911.
 
 
 12
 The state defendants' contention that the eleventh amendment bars injunctive actions against state officials for violations of statutory law contravenes the supremacy clause itself, as well as the thrust of Ex parte Young. The underlying purpose of Ex parte Young seems to require its application to claims against state officials for violations of federal statutes. Allegheny County Sanitary Authority v. U.S. Environmental Protection Agency, 732 F.2d 1167, 1174 (3d Cir.1984). Certainly, such claims have been entertained in the past. See, e.g., Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965). To hold otherwise would allow states to disregard the requirements of federal statutes, undermining the power of federal courts to "vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.' " Pennhurst II, 104 S.Ct. at 910. States may not act inconsistently with the supreme authority of federal statutes and regulations. Fidelity Federal Savings & Loan Assn. v. De la Cuesta, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982); Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963); Hines v. Davidowitz, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941). Consequently, a state cannot authorize its officials to act in violation of federal statutory law. Here, the state defendants contend that the Ex parte Young exception to eleventh amendment immunity does not embrace claims for relief based on federal statutory rights. Neither Pennhurst II nor the policy at the root of Ex parte Young demands such a restrictive interpretation. The eleventh amendment does not bar the appellants' injunctive action against the individual state officials named as defendants here.
 
 
 13
 We must, however, reach a different result with respect to the California Department of Food and Agriculture. A suit brought by a citizen directly against a state or one of its agencies falls within the general proscription of the eleventh amendment. Pennhurst II, 104 S.Ct. at 908. See also, Atascadero State Hospital v. Scanlon, --- U.S. ----, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). Absent express waiver by the state of its sovereign immunity in federal court, consent to suit in unequivocal terms or clear abrogation of its eleventh amendment immunity by Congress, the action against a state agency for any type of relief is barred by the eleventh amendment. Atascadero. None of these exceptions is applicable here. The district court's order, insofar as it directly applies to the CDFA, is therefore vacated and the cause is remanded to the district court for entry of an order dismissing this particular defendant for lack of jurisdiction.
 
 III.
 
 14
 The appellants are private citizens seeking to enforce the provisions of FIFRA. This court has held that FIFRA does not authorize explicitly or implicitly a private cause of action to enforce the Act. Fiedler v. Clark, 714 F.2d 77 (9th Cir.1983) (per curiam). Despite this, the appellants argue they have a cause of action under FIFRA through 42 U.S.C. Sec. 1983, which provides a federal cause of action for damages or equitable relief against state officials who deprive individuals of their federal rights.[4]
 
 
 15
 Section 1983 is available to redress the deprivation of federal statutory rights. Maine v. Thiboutot, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). An action to enforce a particular federal statute may lie under section 1983 even though no such action exists under the particular statute itself. Middlesex County Sewerage Authority v. National Sea Clammers Association, 453 U.S. 1, 18-19, 101 S.Ct. 2615, 2625-2626, 69 L.Ed.2d 435 (1981). Whether section 1983 is available to enforce a particular federal statute depends on two factors. First, Congress must not have foreclosed private enforcement of the statute in the statute itself. Second, the statute must create "enforceable rights." Middlesex, 453 U.S. at 19, 101 S.Ct. at 2626; Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981) (Pennhurst I ). There is a presumption that a federal statute creating enforceable rights may be enforced in a section 1983 action. Keaukaha-Panaewa Community Association v. Hawaiian Homes Commission, 739 F.2d 1467, 1470 (9th Cir.1984).
 
 
 16
 The first factor, foreclosure of private enforcement, ultimately asks whether Congress intended to preclude recourse to remedies outside of the particular statute, in this case, FIFRA. Although the statute may not furnish a private remedy under its terms, such enforcement through Sec. 1983 is still possible if Congress did not act in a manner that would suggest a prohibition on private enforcement. An intent to foreclose private remedies may be inferred if the remedial devices in the statute are "sufficiently comprehensive" to suggest exclusivity. Middlesex, 453 U.S. at 20, 101 S.Ct. at 2626.
 
 
 17
 In gauging the comprehensiveness of the statute's remedial scheme, this court considers the specificity of the statutory remedies. Middlesex, 453 U.S. at 20, 101 S.Ct. at 2626. Such specificity may be found when the relevant act establishes "detailed procedures for administrative and judicial review." Department of Education, State of Hawaii v. Katherine D., 727 F.2d 809, 820 (9th Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 2360, 86 L.Ed.2d 260 (1985). Such details would indicate a precise remedial scheme that "may not be bypassed by bringing suit directly under Sec. 1983." Middlesex, 453 U.S. at 20, 101 S.Ct. at 2626. See also Great American Federal Savings & Loan Association v. Novotny, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979) (procedural requirements of Title VII action cannot be avoided by action under 42 U.S.C. Sec. 1985(c) ). Inconsistencies between the statutory remedies and the possible remedies under Sec. 1983 also may indicate that a private action through Sec. 1983 is not available. Any inconsistency "is a strong indication that Congress did not intend to leave the section 1983 remedies available." Katherine D., 727 F.2d at 820 (damages remedy under Sec. 1983 inconsistent with discouragement of damages remedy in the Education for All Handicapped Children Act). In addition, we consider whether the governing statutory scheme reflects a "balance, completeness and structural integrity" that would suggest remedial exclusivity. Katherine D., 727 F.2d at 820 (quoting Brown v. GSA, 425 U.S. 820, 832, 96 S.Ct. 1961, 1968, 48 L.Ed.2d 402 (1976) ).
 
 
 18
 In Middlesex, the Court found that the enforcement schemes under the Federal Water Pollution Control Act, 33 U.S.C. Sec. 1251 et seq., and the Marine Protection, Research and Sanctuaries Act of 1972, 33 U.S.C. Sec. 1401 et seq., foreclosed access to section 1983 remedies. Those Acts authorized the federal government and the states to seek civil and criminal penalties against violators, allowed interested persons to seek judicial review of agency action, and provided two separate citizen suit provisions. Because the Acts contained "unusually elaborate enforcement provisions," the Court concluded that the Acts excluded recourse to section 1983 remedies. 453 U.S. at 13, 101 S.Ct. at 2623. See also Katherine D., 727 F.2d at 819-20 (Enforcement scheme under EAHCA forecloses Sec. 1983 remedy); Meyerson v. State of Arizona, 709 F.2d 1235, 1239-40 (9th Cir.1983), vacated on other grounds, --- U.S. ----, 104 S.Ct. 1584, 80 L.Ed.2d 118 (1984) (elaborate administrative remedies under section 503 of Rehabilitation Act suggests exclusion of private judicial remedy). Cf. Keaukaha-Panaewa Community v. Hawaiian Homes, 739 F.2d 1467 (9th Cir.1984) (Keaukaha II) (single remedy creating right to sue in federal government not sufficiently comprehensive to exclude Sec. 1983 remedy to enforce Hawaii Admission Act).
 
 
 19
 Here, the appellants claim that private enforcement is needed to effectuate FIFRA's goal of protecting the public from exposure to toxic chemicals. The FIFRA enforcement scheme, however, is sufficiently comprehensive to foreclose private remedies under section 1983.
 
 
 20
 First, the Act's elaboration of remedial devices is fairly detailed. Administrative and judicial enforcement procedures are specifically described in several sections. Under the Act, the EPA Administrator is authorized to order the discontinuation of sale or use of any pesticides that are sold or used in violation of any of the Act's provisions. 7 U.S.C. Sec. 136k(a).[5] The Administrator may also seize and condemn pesticides that are misbranded or mislabeled. 7 U.S.C. Sec. 136k(b). The Act further provides for civil penalties against violators which the Administrator may impose for any violations of the Act. 7 U.S.C. Sec. 136l(a). Criminal sanctions can be imposed for intentional violations. 7 U.S.C. Sec. 136l(b). The Act authorizes actions to enforce the Act or restrain violations of it, 7 U.S.C. Sec. 136n(c)[6], but express enforcement power is given only to the Administrator or the Attorney General. 7 U.S.C. Sec. 136l ; Fiedler, 714 F.2d at 79. Moreover, the Act provides an elaborate administrative review procedure and authorizes review of agency decisions in either the district court or the court of appeals. 7 U.S.C. Secs. 136d and 136n.[7] See also, AMVAC Chemical Corp. v. U.S.E.P.A., 653 F.2d 1260, 1263 (9th Cir.1980). If a particular use of pesticides is challenged as violative of the Act, a complaint may be filed with the Administrator who may refer the complaint to the state for investigation. If the state fails to act within thirty days, the Administrator is authorized to invoke the various enforcement provisions within the Act. 7 U.S.C. Sec. 136w-2.[8]
 
 
 21
 The FIFRA enforcement scheme is substantially more detailed than the enforcement scheme at issue in Keaukaha-Panaewa Community Association v. Hawaiian Homes Commission, 739 F.2d 1467 (9th Cir.1984) (Keaukaha II). There, the court held that the express enforcement measures in the Hawaii Admission Act were not sufficiently comprehensive to preclude enforcement of the Act through section 1983. The Act required the state of Hawaii to hold certain lands in trust for the benefit of native Hawaiians. The only express remedy provided in the Act for alleged violations is a suit brought by the United States for breach of trust. Although this court found no implied private right of action under the Hawaii Admission Act, Keaukaha-Panaewa Community Association v. Hawaiian Homes Commission, 588 F.2d 1216 (9th Cir.1978), cert. denied, 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979) (Keaukaha I), this court later held that private enforcement of the Act is possible through section 1983. The court concluded that the "single public remedy" provided under the Act was not sufficiently comprehensive to foreclose an action to enforce the Act under section 1983. Keaukaha II, 739 F.2d at 1471. Unlike the isolated remedial provision in the Hawaii Admission Act, the enforcement scheme set forth in FIFRA establishes a series of potential remedies to prevent or halt violations of the Act. In its breadth of detail, FIFRA offers a far more elaborate enforcement system than the isolated remedy provided under the Act involved in Keaukaha II.
 
 
 22
 Second, the use of section 1983 to enforce FIFRA would undermine the "balance, completeness and structural integrity" of the Act's express enforcement scheme. As noted, the Act does not furnish an express or implied private remedy as part of its statutory framework. An examination of the Act's legislative history clarifies the legislative purpose such remedial exclusivity was designed to serve. The original Senate report indicated that Congress wanted to maintain flexibility in dealing with violations of the Act. See S.Rep. No. 92-838, reprinted in 1972 U.S.Code Cong. & Ad.News 3993, 4012-13. Indeed, the Act vests the EPA Administrator with discretion to permit the continued use of canceled pesticides if such use is not inconsistent with the purposes of the Act. This is true even if the pesticide has been canceled for noncompliance with the Act. 7 U.S.C. Sec. 136d(a)(1).[9] See also S.Rep. 92838, 1972 U.S.Code Cong. & Ad.News at 4015. The delicate remedial balance inherent in this broad grant of administrative discretion could be upset by the bringing of private suits or even the constant threat of such litigation. This concern offers partial explanation for the explicit congressional rejection of citizen suits as a means of enforcing the Act. The Senate Commerce Committee proposed an amendment which would have added a provision for the bringing of private suits. S.Rep. No. 92-970, reprinted in 1972 U.S.Code Cong. & Ad.News 4092, 4106. The Senate Agriculture and Forestry Committee opposed such an amendment. S.Rep. No. 92-838, reprinted in 1972 U.S.Code Cong. & Ad.News at 4060. "Its position was based on its opinion that the executive branch should have the sole responsibility for administering and enforcing the new statute, its concern for placing further burdens on already overburdened federal courts, and the possibility that the amendment might encourage baseless or harassing suits by professional litigants which would interfere with the orderly administration of the law." People for Environmental Progress v. Leisz, 373 F.Supp. 589, 592 (C.D.Cal.1974) (citing S.Rep. 92-838, 1972 U.S.Code Cong. & Ad.News at 4025, 4060). Indeed, the House-Senate Conference Committee explicitly rejected the use of private suits to enforce the Act. Conf.Rep. No. 92-1540, reprinted in 1972 U.S.Code Cong. & Ad.News 4130, 4134. This explicit rejection of a proposed amendment to authorize private suits is a strong indication that Congress was opposed to private actions to enforce the provisions of FIFRA. See Donovan v. Hotel, Motel & Restaurant Employees, 700 F.2d 539, 545 n. 8 (9th Cir.1983).
 
 
 23
 Finally, we think it important that the Act expressly delegates primary enforcement responsibility to the states. The Act authorizes states to adopt adequate measures to ensure the proper use of pesticides and to maintain records to document compliance with state laws and regulations. 7 U.S.C. Sec. 136w-1. The lack of adequate state regulation or the failure of the state to act pursuant to its own regulations triggers the Administrator's responsibility to take action pursuant to FIFRA. 7 U.S.C. Secs. 136w-1(c) and 136w-2(b). The integration of state remedies to enforce the purposes of FIFRA further suggests to us that Congress intended to restrict the range of enforcement choices to those set forth in the Act itself. Private actions under section 1983 to enforce FIFRA would be inconsistent with the policy of state and federal cooperation encouraged in the Act's express enforcement scheme. See Tyler v. Mmes. Pasqua & Toloso, 748 F.2d 283, 287 (5th Cir.1984) (state remedies authorized in Food Stamp Act to supplement federal remedies suggests enforcement scheme exclusive of Sec. 1983).
 
 
 24
 We conclude that FIFRA's enforcement scheme is sufficiently comprehensive to foreclose the use of section 1983 as a means to enforce the Act. The statutory scheme is substantially detailed and embodies a coherent and balanced policy whose integrity could be greatly impaired by the constant threat of private actions through section 1983.[10]IV.
 
 
 25
 The National Environmental Policy Act (NEPA) requires an environmental impact statement for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. Sec. 4332(2)(C). The appellants contend that the participation of federal officials in the state beetle eradication project constituted major federal action and triggered the EIS requirement.
 
 
 26
 There are no clear standards for defining the point at which federal participation transforms a state or local project into major federal action. The matter is simply one of degree. Friends of the Earth v. Coleman, 518 F.2d 323, 329 (9th Cir.1975). "Marginal" federal action will not render otherwise local action federal. "Where federal funding is not present, this court has generally been unwilling to impose the NEPA requirement." State of Alaska v. Andrus, 591 F.2d 537, 541 (9th Cir.1979). The employment of federal officials in a state project, however, may be a factor in making the determination of whether the action is sufficiently federal to require an EIS when the officials are significantly involved in the state project. Id.
 
 
 27
 Here, no federal funds have been sought by the state or spent on the state's beetle eradication project. The appellants attempt to base their federal characterization of the project on the presence of three federal officials on the state's eight-member Japanese beetle advisory board. The only arguable basis for alleging the expenditure of federal funds is that the federal government pays the salaries of these officials without seeking reimbursement from the state for the time these officials spend on the beetle advisory board. Travel expenses are reimbursed, however, and any indirect funding by the use of federal salaried officials seems marginal at most. In addition, the officials were not placed in a decisionmaking role. They were members of a panel which only offered recommendations to the Director of the California Department of Food and Agriculture who made final decisions regarding the eradication project. The State's beetle eradication project was not major federal action under the National Environmental Policy Act.
 
 V.
 
 28
 Based on the foregoing, the district court must be affirmed. The enforcement scheme under FIFRA is sufficiently comprehensive to foreclose private enforcement through section 1983. The CDFA beetle eradication project has not been transformed into major federal action within the meaning of NEPA by the presence on the State's scientific advisory board of three federal officials who were invited to participate in the project by the State and who did not possess the authority to implement those aspects of the eradication project challenged here. This is primarily a state project that is neither controlled nor funded by the federal government to any significant degree.
 
 
 29
 With respect to the California Department of Food and Agriculture, the district court's order is vacated and the cause is remanded for entry of an order dismissing this defendant.
 
 
 30
 AFFIRMED in part, VACATED in part and REMANDED.
 
 
 
 [1]
 The Japanese beetle is generally found east of the Mississippi but has appeared in California in the past, primarily in the Sacramento and San Diego areas. The beetle feeds on a variety of plants, including commercial crops such as fruits, soybeans, corn and alfalfa. The larvae feed on roots. (Affidavit of Dr. Michael G. Klein at 3)
 
 
 [2]
 The plaintiffs allege that the use of carbaryl poses several health risks, including possible carcinogenic and mutagenic effects, reduced immunity to certain viruses, and lowered sperm counts. (Appellants' Brief at 9-10). The district court concluded that substantial evidence indicated that a Japanese beetle infestation could result in agricultural losses as high as $65.5 million
 
 
 [3]
 The Eleventh Amendment provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Amendment's proscription has been extended to bar federal courts from exercising jurisdiction over suits brought by a citizen against his own state. Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)
 
 
 [4]
 42 U.S.C. Sec. 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
 
 
 [5]
 Sec. 136k. Stop sale, use, removal, and seizure
 (a) Stop sale, etc., orders.--Whenever any pesticide or device is found by the Administrator in any State and there is reason to believe on the basis of inspection or tests that such pesticide or device is in violation of any of the provisions of this subchapter, or that such pesticide or device has been or is intended to be distributed or sold in violation of any such provisions, or when the registration of the pesticide has been canceled by a final order or has been suspended, the Administrator may issue a written or printed "stop sale, use or removal" order to any person who owns, controls, or has custody of such pesticide or device, and after receipt of such order no person shall sell, use, or remove the pesticide or device described in the order except in accordance with the provisions of the order.
 
 
 [6]
 Sec. 136n(c) provides:
 Jurisdiction of district courts.--The district courts of the United States are vested with jurisdiction specifically to enforce, and to prevent and restrain violations of, this subchapter.
 
 
 [7]
 Sec. 136n. Administrative procedure; judicial review
 (a) District court review.--Except as is otherwise provided in this subchapter, Agency refusals to cancel or suspend registrations or change classifications not following a hearing and other final Agency actions not committed to Agency discretion by law are judicially reviewable in the district court.
 (b) Review by court of appeals.--In the case of actual controversy as to the validity of any order issued by the Administrator following a public hearing, any person who will be adversely affected by such order and who had been a party to the proceedings may obtain judicial review by filing in the United States court of appeals for the circuit wherein such person resides or has a place of business, within 60 days after the entry of such order, a petition praying that the order be set aside in whole or in part.
 
 
 [8]
 Sec. 136w-2. Failure by the state to assure enforcement of state pesticide use regulations
 (a) Upon receipt of any complaint or other information alleging or indicating a significant violation of the pesticide use provisions of this Act the Administrator shall refer the matter to the appropriate State officials for their investigation of the matter consistent with the requirements of this Act. If, within thirty days, the State has not commenced appropriate enforcement action, the Administrator may act upon the complaint or information to the extent authorized under this Act.
 
 
 [9]
 Sec. 136d(a)(1) provides "[t]hat the Administrator may permit the continued sale and use of existing stocks of a pesticide whose registration is canceled under this subsection or subsection (b) of this section to such extent, under such conditions, and for such uses as he may specify if he determines that such sale or use is not inconsistent with the purposes of this subchapter and will not have unreasonable adverse effects on the environment."
 Sec. 136d(b) provides:
 Cancellation and change in classification.--If it appears to the Administrator that a pesticide or its labeling or other material required to be submitted does not comply with the provisions of this subchapter or, when used in accordance with widespread and commonly recognized practice, generally causes unreasonable adverse effects on the environment, the Administrator may issue a notice of his intent either--
 (1) to cancel its registration or to change its classification together with the reasons (including the factual basis) for his action, or
 (2) to hold a hearing to determine whether or not its registration should be canceled or its classification changed.
 
 
 [10]
 Because we conclude that the enforcement scheme detailed in FIFRA is sufficiently comprehensive to foreclose private enforcement through section 1983, we need not address whether the Act creates "enforceable rights." Middlesex, 453 U.S. at 19, 101 S.Ct. at 2626