**SOFAMOR DANEK GROUP, INC., Plaintiff–Appellee,**

v.

**Mark BROWN, in his official capacity as Director of the State of Washington Department of Labor and Industries, Defendant–Appellant.**

**No. 96–35983.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 8, 1997.

Decided Sept. 15, 1997.

Beverly Norwood Goetz, Assistant Attorney General, Seattle, WA, for defendant-appellant.

Christopher W. Tompkins, Betts, Patterson & Mines, Seattle, WA, and Edward M. Basile, King & Spalding, Washington, DC, for plaintiff-appellee.

Before: REAVLEY,* O'SCANNLAIN and FERNANDEZ, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether an official of the State of Washington is subject to suit in federal court for alleged violations of federal trademark law.

I

Mark Brown, Director of the Department of Labor and Industries of the State of Washington, appeals interlocutorily the district court's order denying his motion to dismiss an action brought against him pursuant to § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a),[1] by Sofamor Danek Group, Inc.

---

* The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

1. The Lanham Act, in relevant part, provides:
   False designations of origin, false descriptions, and dilution forbidden.
   (a) Civil action
   (1) Any person who, in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which:

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods services, or commercial activities,
shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

("Sofamor"), a manufacturer of spinal fixation devices implanted as part of lumbar fusion spinal surgery. Brown claims that the district court erred in not finding him immune from suit under the Eleventh Amendment of the United States Constitution. Sofamor is currently seeking an injunction in the district court prohibiting Brown from making allegedly false and misleading statements in violation of the Lanham Act regarding its spinal fixation devices in a document issued by the Department.

In his capacity as Director of the Department, Brown administers the Industrial Insurance Act ("Act"). Wash. Rev.Code § 51. The Act is a statutory scheme created by the legislature of the State of Washington to provide "sure and certain relief for workers, injured in their work, and their families or dependents." *Id.* § 51.04.010. The State of Washington provides insurance (including medical insurance) for workers directly, rather than requiring employers to purchase such insurance from private insurance companies. *Id.*

Among Brown's legislatively-mandated functions is the supervision of "medical, surgical, and hospital treatment to the intent that it may be in all cases efficient and up to the recognized standard of modern surgery." *Id.* § 51.04.020(4). Brown is also required to:

[S]upervise the providing of prompt and efficient care and treatment ... and to that end shall, from time to time, establish and promulgate and supervise the administration of printed forms, rules, regulations, and practices for the furnishing of such care and treatment....

*Id.* § 51.04.030.

Pursuant to the foregoing, the Department issued medical guidelines regarding lumbar fusion surgery and a "Lumbar Fusion Informed Consent Form" ("Consent Form"). Brown required that the surgeon and the patient sign the Consent Form before undergoing any lumbar fusion surgery on the lower spine that would be covered by the Act. The Consent Form contains, inter alia, statements regarding the effectiveness of lumbar fusion spinal surgery in general and, more specifically, the regulatory status of and risks associated with pedicle screw device systems, which Sofamor manufactures. Sofamor claims that the statements in the Consent Form concerning spinal fixation devices (such as Sofamor's) are false and misleading in violation of the Lanham Act.

Sofamor filed suit in federal district court on June 3, 1996, seeking a prospective injunction against Brown "in his official capacity as Director of the State of Washington Department of Labor & Industries." In its complaint, followed immediately by a motion for preliminary injunction, Sofamor sought an injunction prohibiting:

Brown, and his agents or employees ... from adopting, publishing, or requiring use of the Consent Form, or any required consent form, or the dissemination of specified information with respect to Sofamor's pedicle screw spinal devices.

Sofamor sought neither money damages nor a declaratory judgement. Sofamor alleged that Brown uses the Consent Form for a commercial purpose, and that Sofamor is suffering commercial harm as a result of the alleged false and misleading statements therein.

In response, Brown moved to dismiss Sofamor's complaint based on lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), and failure to state a claim upon which relief can be granted under Fed. R.Civ.P. 12(b)(6). Brown claimed, inter alia, that he was immune from suit by virtue of the Eleventh Amendment, and that § 43(a) of the Lanham Act was inapplicable to the Consent Form.

■ By consent of the parties, Magistrate Judge J. Kelly Arnold heard and decided Sofamor's motion for a preliminary injunction and Brown's motion to dismiss, denying both motions. Brown unsuccessfully moved

---

(2) As used in this subsection, the term "any person" includes any State, instrumentality of a State or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity.
15 U.S.C. § 1125(a).

the district court on July 25, 1996, for reconsideration of the denial of his motion to dismiss and thereafter filed a timely notice of appeal.[2]

## II

The sole issue before us is whether the district court erred in failing to dismiss Sofamor's complaint on Eleventh Amendment[3] grounds.

### A

■ The Eleventh Amendment creates an important limitation on federal court jurisdiction, generally prohibiting federal courts from hearing suits brought by private citizens against state governments without the state's consent. *See Hans v. Louisiana*, 134 U.S. 1, 15, 10 S.Ct. 504, 507, 33 L.Ed. 842 (1890); *Natural Resources Defense Council v. California Dep't of Transportation*, 96 F.3d 420, 421 (9th Cir.1996). Even when Congress is vested with complete law-making authority over a particular area by the Constitution, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting states. *See Seminole Tribe of Florida v. Florida*, —— U.S. ——, ——, 116 S.Ct. 1114, 1131, 134 L.Ed.2d 252 (1996). The recognition of sovereign immunity embodied in the Eleventh Amendment has not been limited to the suits described in its text, however. *See Idaho v. Coeur d'Alene*, —— U.S. ——, ——, 117 S.Ct. 2028, 2033, 138 L.Ed.2d 438 (1997); *Seminole Tribe*, —— U.S. at ——, 116 S.Ct. at 1122. Acknowledging the broader concept of state

sovereign immunity implicit in the Constitution and the respect afforded to states in our federal system, protection from suit has been extended to suits brought by a state's own citizens, *Hans*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842, and to suits invoking the federal-question jurisdiction of Article III courts. *See Coeur d'Alene*, —— U.S. at ——, 117 S.Ct. at 2033.

■ With one exception, state immunity from suit extends also to its agencies and officers. *See Puerto Rico Aqueduct*, 506 U.S. at 142–46, 113 S.Ct. at 686–88; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02, 104 S.Ct. 900, 908–09, 79 L.Ed.2d 67 (1984); *Natural Resources Defense Council*, 96 F.3d at 421. The Supreme Court recognized the exception in the case of *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), in which it held that federal courts have jurisdiction over suits against state officers to enjoin official actions that violate federal law, even if the state itself is immune from suit under the Eleventh Amendment. *See id.* at 155–56, 28 S.Ct. at 452–53. The *Ex parte Young* doctrine is predicated on the notion that a state cannot authorize one of its agents to violate the Constitution and laws of the United States. *See Pennhurst*, 465 U.S. at 102, 104 S.Ct. at 908; *Ex parte Young*, 209 U.S. at 159–60, 28 S.Ct. at 453–54; *Natural Resources Defense Council*, 96 F.3d at 422; *Almond Hill Sch. v. United States Dep't of Agriculture*, 768 F.2d 1030, 1034 (9th Cir.1985). A state officer acting in violation of federal law is considered "stripped of his official or representative

---

**2.** Appellate courts have jurisdiction to hear appeals only from "final decisions" of district courts. *See* 28 U.S.C. § 1291. A district court's order denying a motion to dismiss on a claim of Eleventh Amendment immunity is an immediately appealable "collateral order" under 28 U.S.C. § 1291 because the central benefit of immunity, the right not to stand trial in the first instance, is effectively lost if a case is erroneously permitted to proceed to trial. *See, e.g., Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 143–44, 113 S.Ct. 684, 687–88, 121 L.Ed.2d 605 (1993); *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1947). Therefore, we have jurisdiction over Brown's Fed.R.Civ.P. 12(b)(1) claim that the

district court erred in failing to dismiss Sofamor's complaint due to lack of subject matter jurisdiction.

We review *de novo* the issue of whether a party is immune from suit under the Eleventh Amendment. *See, e.g., Eaglesmith v. Ward*, 73 F.3d 857, 859 (9th Cir.1995); *Harrison v. Hickel*, 6 F.3d 1347, 1352 (9th Cir.1993).

**3.** The text of the Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend XI.

character" and, consequently, is not shielded from suit by the state's sovereign immunity. *See Pennhurst,* 465 U.S. at 102, 104 S.Ct. at 908 (quoting *Ex parte Young,* 209 U.S. at 159–60, 28 S.Ct. at 453–54); *Natural Resources Defense Council,* 96 F.3d at 422; *Almond Hill Sch.,* 768 F.2d at 1034. As a result, state officials may, in limited circumstances, be subject to suit in federal court "to permit the federal courts to vindicate federal rights and hold [them] responsible to the 'supreme authority of the United States.'" *See Pennhurst,* 465 U.S. at 105, 104 S.Ct. at 910 (quoting *Ex parte Young,* 209 U.S. at 160, 28 S.Ct. at 454).

The Supreme Court recently addressed the "proper scope and application" of the *Ex parte Young* doctrine in *Idaho v. Coeur d'Alene.* *See Coeur d'Alene,* —— U.S. at ——, 117 S.Ct. at 2034. Although the "continuing validity" of *Ex parte Young* was not questioned, the Court cautioned that "application of the *Young* exception must reflect a proper understanding of its role in our federal system and respect for state courts instead of a reflexive reliance on an obvious fiction." *Id.* Justice Kennedy, writing for the majority, emphasized that *Ex parte Young* must be interpreted consistently with the "real interests served by the Eleventh Amendment." *Id.* To permit federal court jurisdiction in every case where prospective declaratory and injunctive relief is sought against an officer of the state, named in his official capacity, "would be to adhere to an empty formalism and to undermine the principle, reaffirmed just last Term in *Seminole Tribe,* that Eleventh Amendment immunity represents a real limitation on a federal court's federal-question jurisdiction." *Id.*

### B

■ Brown argues as an initial matter that Sofamor's claim must fail because *Ex parte Young* applies only to federal constitutional violations, not to violations of federal statutory law. We have held that *Ex parte Young* applies to violations of federal statutory law as well as federal constitutional violations. *See, e.g., Natural Resources Defense Council,* 96 F.3d at 422 (holding that *Ex parte Young* applies to violations of federal

statutory law); *Almond Hill Sch.,* 768 F.2d at 1034 ("The underlying purpose of *Ex parte Young* seems to require its application to claims against state officials for violations of federal statutes."); *see also Pennhurst,* 465 U.S. at 105, 104 S.Ct. at 910 ("[T]he *Young* doctrine has been accepted as necessary to permit the federal courts to vindicate federal rights...."). Therefore, Sofamor's action can not be barred simply because it has alleged a violation of federal statutory law as opposed to a violation of the Constitution.

■ Brown further argues that the kind of injunctive relief sought by Sofamor is not authorized by *Ex parte Young.* We disagree. Sofamor's claim pertains solely to prospective injunctive relief; Sofamor wants Brown to stop making statements about its spinal fixation devices which it alleges violate federal law. Sofamor is not seeking retroactive relief that would require the payment of funds from the state treasury. *See Pennhurst,* 465 U.S. at 102–03, 104 S.Ct. at 908–09 (holding that federal court may award injunction governing state official's future conduct, but may not award retroactive monetary relief); *Edelman v. Jordan,* 415 U.S. 651, 667–69, 94 S.Ct. 1347, 1357–58, 39 L.Ed.2d 662 (1974) (holding that Eleventh Amendment does not bar suit to compel future state compliance with federal standards for processing welfare applications, but rejecting injunction ordering retroactive payment of previously owed benefits); *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979) ("The distinction between the relief permissible under the doctrine of *Ex parte Young* and that found barred in *Edelman* was the difference between prospective relief on one hand and retrospective relief on the other."); *Natural Resources Defense Council,* 96 F.3d at 422 (federal court may award prospective injunctive relief that governs state official's future conduct, but not retroactive relief that requires payment of funds from state treasury). Nor is Sofamor seeking any other relief which could arguably be held to implicate "state policies or procedures" regarding healthcare in the State of Washington to the extent that the State could be considered the real party in interest in this litigation. *See Coeur d'Alene,* ——

U.S. at ——, 117 S.Ct. at 2034. Instead, Sofamor has "scrupulously followed the dictates of the Supreme Court's Eleventh Amendment cases" in requesting this narrowly tailored relief. *See Natural Resources Defense Council,* 96 F.3d at 423; *see also Coeur d'Alene,* —— U.S. at ——, 117 S.Ct. at 2046 (O'Connor, J. concurring) ("[A] *Young* suit is available where a plaintiff alleges an ongoing violation of federal law and where the relief sought is prospective rather than retrospective."). Sofamor's suit against Brown is not barred under traditional Eleventh Amendment analysis.

### C

■ Brown also argues that Sofamor's suit is nevertheless barred because the Supreme Court held in *Seminole Tribe* that Congress may not abrogate state sovereign immunity under the Commerce Clause, the constitutional provision under which the Lanham Act was enacted. Although Brown is correct to the extent he argues that *Seminole Tribe* limited the power of Congress unilaterally to abrogate states' Eleventh Amendment immunity to instances where Congress is acting pursuant to a valid grant of constitutional authority, this aspect of *Seminole Tribe* does not concern us. Sofamor has not brought suit against the State of Washington, but against one of its officials. *Seminole Tribe* did not alter the ability to "bring suit against a state officer in order to ensure that the officer's conduct is in compliance with federal law." *Seminole Tribe,* —— U.S. at —— n. 14, 116 S.Ct. at 1131 n. 14.

■ The Supreme Court did acknowledge in *Seminole Tribe,* however, that even if traditional *Ex parte Young* criteria are otherwise satisfied, a federal court's discretion to permit actions to proceed against state officials is not unlimited. The Court held "where Congress has prescribed a detailed remedial scheme for the enforcement against a state of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based on *Ex parte Young.*" *Seminole Tribe,* —— U.S. at ——, 116 S. Ct at 1132. A fortiori, it is within the power of Congress to limit the availability of *Ex parte*

*Young* suits against state officers for violations of federal statutory law. *See Natural Resources Defense Council,* 96 F.3d at 423. In order to determine whether Sofamor's action against Brown may proceed, therefore, we are required to determine whether Congress intended to limit the availability of *Ex parte Young* suits over a cause of action brought under the statute at issue in the current dispute, the Lanham Act.

■ As in any case of statutory interpretation, we turn first to the text of the statute. In defining the parties subject to its provisions, the Lanham Act provides:

> Any person who [acts in violation of the statute] ... shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.... [T]he term *"any person" includes any State, instrumentality of a State or employee of a State or instrumentality of a State acting in his or her official capacity.* Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity.

15 U.S.C § 1125(a) (emphasis added). It is evident from the plain language of the statute that Congress intended to authorize suit against state officials under the Lanham Act. Indeed, the Lanham Act contemplates suit against state officials even more clearly than the Clean Water Act, 33 U.S.C. § 1365, which we held not to contain any Congressional limitation on *Ex parte Young* actions. *See Natural Resources Defense Council,* 96 F.3d at 424. To compare, the text of the Clean Water Act provides that suit may be brought against "any ... governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution," which evidenced Congress' implicit intent to authorize citizens to bring *Ex parte Young* suits in order to further the goals of the statute. *Id.* The Lanham Act is even less ambiguous in this regard; its remedial scheme does not require us to determine Congress' implicit intent because Congress' explicit authorization of *Ex parte Young* actions is readily discernable from the very terms of the statute.

We conclude, therefore, that Congress did not intend to limit the availability of *Ex parte Young* suits against state officials under the Lanham Act and, thus, the district court did not err in finding that *Seminole Tribe* does not preempt the application of *Ex parte Young* to the facts in this case.[4]

### III

■■■■ For the foregoing reasons, we conclude that the district court did not err when it held that Brown, as an official of the State of Washington, is subject to suit in federal court for alleged violations of the Lanham Act. The district court's refusal to dismiss the action for lack of subject matter jurisdiction is therefore AFFIRMED and this case is REMANDED to the district court for proceedings not inconsistent with this opinion.

AFFIRMED and REMANDED.

---

4. We do not reach the other arguments raised by Brown. On October 22, 1996, Brown moved the district court for certification under 28 U.S.C. § 1292(b) of his Fed.R.Civ.P. 12(b)(6) motion, that Sofamor had failed to state a claim under the Lanham Act upon which relief may be granted, but this motion was denied. This issue has never been certified for interlocutory appeal to the court of appeals pursuant to 28 U.S.C. § 1292(b). Accordingly, we lack jurisdiction to consider this claim. *See* 28 U.S.C. § 1292(b); *Zucker v. Maxicare Health Plans Inc.*, 14 F.3d 477, 485 (9th Cir.1994) (court of appeals lacks jurisdiction over issues not certified under 28 U.S.C. § 1292(b)).

Brown argues for the first time on appeal that he should be entitled to state action immunity under the doctrine of *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). Before an argument will be considered on appeal, "the argument must be raised sufficiently for the trial court to rule on it," *Broad v. Sealaska Corp.*, 85 F.3d 422, 430 (9th Cir.1996), *cert. denied,* — U.S. —, 117 S.Ct. 768, 136 L.Ed.2d 714 (Jan. 21, 1997) (quoting *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957 (9th Cir.1989)), or fall within one of the "narrow exceptions" to the general rule that an issue may not be raised for the first time on appeal. *See United States v. Carlson*, 900 F.2d 1346, 1349 (9th Cir.1990). Brown has not argued that there are any "exceptional circumstances" why the issue was not raised in the district court. *See Carlson*, 900 F.2d at 1349. Nor has he claimed that there has been any recent change in the law during the pendency of this appeal. *Id.* Finally, Brown has not convinced us that this is purely an issue of law and that Sofamor would not be prejudiced as a result of his failure to raise this issue before the district court. *Id.*